OPINION
Defendant-appellant, Harold Sholler, appeals a conviction entered by a jury verdict in the Clinton County Court of Common Pleas finding him guilty of violating R.C. 2907.02(A)(1)(b) and2907.02(B). We affirm.
Appellant was found to have violated R.C. 2907.02(A)(1)(b) by raping his eleven-year-old stepgranddaughter ("victim") by engaging in sexual conduct on at least two different occasions. Appellant was also found to have violated R.C. 2907.02(B) by using "force or the threat of force" while committing sexual conduct upon the victim. The acts took place between March 31, 1995 and July 31, 1995. During that time period, the victim occasionally stayed with her maternal grandmother, who is the spouse of appellant.
The victim testified that she could not remember how many times appellant "put his mouth to my private" between her legs. She also testified that once she was unable to push his head away because he pushed back with his head. The victim testified how appellant made the victim promise to not tell anyone what he did because if anyone else knew, "he'd get hung." She also testified that she did not tell appellant to stop because she "was scared of him."
On July 20, 1995, appellant was seen by a witness entering the victim's bedroom. The witness was spending the night in a room about three feet down the hallway from the victim's bedroom. Shortly after appellant entered the victim's bedroom, the witness testified that she heard the victim say "Harold, what are you doing?" and appellant answered "Don't worry, your grandma's not home." The witness then heard heavy breathing and heard the bed squeaking.
The victim also testified concerning the events of July 20, 1995. The victim testified that she awoke and found appellant in her bed pulling her shorts and underwear off and that he forced her legs apart and "put his mouth to [her] private." When appellant's wife returned to the house, the witness told appellant's wife what she had seen and heard. Later that night, the victim confirmed that she had been raped and that appellant had raped her on other occasions.
Appellant was found guilty of two counts of rape as found in R.C. 2907.02(A)(1)(b). R.C. 2907.02(B) requires a mandatory sentence of life imprisonment for any person who rapes a person less than thirteen years of age and "purposely compels the victim to submit by force or threat of force." A unanimous jury decision found that appellant had engaged in sexual conduct with the victim and purposely compelled the victim to submit by force or threat of force. Appellant presents one assignment of error:
 DEFENDANT-APPELLANT WAS SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF ARTICLE I, SECTION 9 OF THE OHIO CONSTITUTION AND THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION WHEN HE WAS SENTENCED TO A MANDATORY TERM OF LIFE IMPRISONMENT FOR RAPE UNDER R.C. 2907.02.
Appellant argues that (1) the life imprisonment sentence that he received was "cruel and unusual punishment;" (2) the sentence imposed is disproportionate compared to his alleged acts; (3) there is little difference between the elements of rape and gross sexual imposition, and because of that, there should also be little difference between the sentences for rape and gross sexual imposition; and (4) the element of force contained in R.C.2907.02(B) has been expanded by Ohio courts to the point that it has ceased to be a requirement. We address appellant's arguments in the order that they have been presented.
 I
The issue of the constitutionality of R.C. 2907.02(B) is a well-settled issue. Many courts, including this court, have ruled that a life sentence under R.C. 2907.02(B) is constitutional and is not cruel and unusual punishment. State v. Wolf (Dec. 30, 1994), Lake App. No. 93-L-151, unreported. See, also, State v. Smelcer (1993), 89 Ohio App.3d 115, 127; State v. Fenton (1990),68 Ohio App.3d 412, 438-439; State v. Gladding (1990), 66 Ohio App.3d 502,513; State v. Gregory (1982), 8 Ohio App.3d 184,185-186; State v. Barnes (Apr. 8, 1985), Clermont App. No. CA84-05-041, unreported; State v. Tull (Feb. 27, 1984), Hamilton App. No. C-830355, unreported.
 II
The constitutional prohibition against cruel and unusual punishment has also been interpreted to prohibit sentences that are disproportionate to the crime committed. State v. Garland (Dec. 16, 1996), Fayette App. No. CA96-05-011, unreported, following Solem v. Helm (1983), 463 U.S. 277, 284,103 S.Ct. 3001, 3006. "The Ohio Supreme Court has held that to warrant constitutional intercession, the `penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community.'" Garland, unreported, quoting McDougle v. Maxwell (1964), 1 Ohio St.2d 68, 70. The penalty of life imprisonment for a violation of R.C. 2907.02(B) is not disproportional to the offense because "[t]he offense is shocking, outrageous, abominable, and it has enduring effects on the child. A penalty equivalent to its enormity is imposed." State v. Gregory, 8 Ohio App.3d at 186. We find that there is no constitutional violation when a person is convicted and sentenced to life imprisonment for a violation of R.C. 2907.02(B) because the penalty is proportional to the act.
 III
Gross sexual imposition of a person less than thirteen years of age is a third degree felony, R.C. 2907.05(B), and for acts committed prior to July 1, 1996, the term of imprisonment is either one, one and one-half, or two years. R.C. 2929.11(D)(1). The committee comment to R.C. 2907.05 states that gross sexual imposition is "an offense analogous to rape, though less serious. Its elements are identical to those of rape except that the type of sexual activity involved is sexual contact, rather than sexual conduct." Sexual contact means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). The definition of sexual conduct includes the act of cunnilingus. R.C. 2907.01(A).
There is a clear distinction between sexual contact and sexual conduct involving cunnilingus. The law requires no further activity to constitute cunnilingus beyond the placing of one's mouth on the female's vagina. State v. Bailey (1992), 78 Ohio App.3d 394,395. Appellant's argument that his sentence is disproportional because there is little difference between his actions and gross sexual imposition is not well-taken.
 IV
Appellant argues that the facts of his case do not establish the force necessary for a conviction under R.C. 2907.02(B). Appellant contends that his supposed acts of opening the victim's legs and pushing his head back after the victim had pushed it away do not constitute "force." Appellant recognizes the holding of State v. Eskridge (1988), 38 Ohio St.3d 56, but argues that Eskridge has expanded "force" to the point that "force" ceases to be a requirement for a conviction under R.C. 2907.02(B). In Eskridge, 38 Ohio St.3d at 58-59, the Supreme Court held that:
 The force and violence necessary in rape is naturally a relative term, depending upon the age, size and strength of the parties and their relation to each other; as the relation between father and daughter under twelve years of age. With the filial obligation of obedience to the parent, the same degree of force and violence would not be required upon a person of such tender years, as would be required were the parties more nearly equal in age, size and strength. * * * R.C. 2907.02(B) requires only that minimal force or threat of force be used in the commission of a rape. * * * We also recognize the coercion inherent in parental authority when a father sexually abuses his child. Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.
In the present case, appellant used his position as a stepgrandparent to coerce the victim into sexual acts. Because of appellant's position of authority, the element of force can be established with evidence of minimal force. Appellee showed that minimal force was used through the victim's testimony that appellant forced her legs apart and that appellant pushed back when the victim attempted to push appellant's head away from her. The victim also testified that she did not tell appellant to stop because she "was scared of him." We follow the reasoning of Eskridge and find that the element of force was established by appellee.
Appellant's assignment of error is accordingly overruled. Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.