DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Timothy Wilson appeals the verdict rendered in the Common Pleas Court of Summit County convicting him of five counts of rape, ten counts of felonious sexual penetration, and ten counts of gross sexual imposition. We affirm.
Wilson was indicted in August 1996 on ten counts of rape, ten counts of felonious sexual penetration, and ten counts of gross sexual imposition. Each of the counts stemmed from incidents that occurred between August 1995 and June 1996 and involved a female victim who was ten years old.
Wilson pleaded not guilty to each of the charges and was tried to a jury. The jury found him guilty of five counts of rape by force or threat of force, guilty of ten counts of felonious sexual penetration by force or threat of force, guilty of ten counts of gross sexual imposition, and not guilty of five counts of rape. The trial court sentenced him to life imprisonment, with parole eligibility after ten years, on each of the five counts of rape and on each of the ten counts of felonious sexual penetration, and to a definite term of two years on each of the ten counts of gross sexual imposition, with all sentences to be served consecutively.
Wilson has appealed, asserting four assignments of error.
 I.
THE TRIAL COURT ERRED IN ADMITTING STATEMENTS MADE TO A SOCIAL WORKER UNDER EVIDENCE RULE 803(4) WHEN SAID STATEMENTS WERE NOT MADE FOR PURPOSES OF DIAGNOSIS OR TREATMENT IN VIOLATION OF THE OHIO CONSTITUTION AND THE UNITED STATES CONSTITUTION.
In his first assignment of error, Wilson argues that the statements made by the victim to a social worker assigned to the emergency room at Children's Hospital Medical Center, were inadmissible hearsay because they were not made for the purpose of obtaining medical treatment. Wilson relies on State v. Boston
(1989), 46 Ohio St.3d 108, to argue that Evid. R. 803(4) does not permit admission of statements made by a child to medical personnel when it is not clear that the child made the statements due to her own desire for medical treatment. Wilson claims that there is a reasonable probability that the admission of this evidence contributed to his convictions.
Evid.R. 803 provides certain exceptions to the hearsay rule, regardless of whether the declarant is available as a witness. Evid.R. 803(4) excepts from the hearsay rule "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
In State v. Dever (1992), 64 Ohio St.3d 401, 408-412, certiorari denied (1993), 507 U.S. 919, 122 L.Ed.2d 672, the Supreme Court of Ohio expressly rejected the argument that statements made by a child to medical personnel must be motivated by the child's own desire for medical treatment in order to be admissible pursuant to Evid.R. 803(4). The Dever court modified the rigid motivational requirements of Boston, reasoning that:
 "[a]n overly strict motivational requirement for the statements of young children will almost always
keep those statements out of evidence. That is not an acceptable balance of competing interests. We are unwilling to approve a rule which allows a person accused of abusing a young child (when there is no physical evidence of that abuse) to keep the child's statements to a doctor out of evidence simply because of a lack of initial motivation to seek treatment."
Id. at 410. (Emphasis sic.) It is within the broad discretion of the trial court to determine whether the circumstances surrounding the making of the hearsay statements by the child were reliable.Id.
In State v. Chappell (1994), 97 Ohio App.3d 515, the Eighth District Court of Appeals, addressed the issue of whether statements made to social workers by alleged rape victims are admissible under Evid.R. 803(4). In that case, a social worker with the county department of children's services, whose job was to investigate alleged cases of neglect or physical or sexual abuse, interviewed the alleged victim. The court concluded that the victim's statements to the social worker were inadmissible under Evid.R. 803(4) because the function of that social worker was "neither diagnosis or treatment," but rather "to determine if further investigation was warranted after getting the child's statement." Id. at 534. The court, however, stressed that the function of the social worker was critical to this determination, and that under certain circumstances statements made to social workers would be admissible:
 We would not adopt a rigid rule as to what constitutes "diagnosis and treatment" or limit diagnosis and treatment to licensed physicians, as such a narrow holding would undercut the function of nurses, psychiatrists, therapists, and various individuals who treat victims of sexual abuse. We are equally not prepared to hold that a social worker by merely being a social worker is automatically included in the category of individuals who can render treatment or diagnose sex abuse victims. The inclusion of a social worker into this select group of care providers must depend on her function. Where a social worker's function does not include diagnosis or treatment (whether it be mental or physical treatment of a child sex abuse victim), any statement made to the social worker cannot be admissible under the exception to the hearsay rule in Evid.R. 803(4).
Id. at 530-531. (Emphasis added.) Statements made during the course of a psychological examination, for example, are admissible under Evid.R. 803(4), "provided that the purpose of the psychological examination is the diagnosis and treatment of the victim's psychological condition, rather than gathering evidence against the accused." State v. Vaughn (1995),106 Ohio App.3d 775, 780.
In this case, the social worker testified that she was an employee of the hospital to which the victim was taken after the allegations of abuse surfaced. She explained that she was assigned full time to the emergency room and that her responsibility was to interview children in cases of alleged abuse and to report her findings to the treating physician "so they can make a determination about what to do." She explained that she followed established hospital criteria to determine whether an examination should be done by emergency room personnel. Notes of her conversations with the children became part of the children's medical records.
The social worker determined from the victim in this case the frequency and nature of the alleged abuse and that the child had experienced pain in the vaginal area following instances of abuse. The social worker then reported that information to the physicians involved, and a physical examination of the victim was conducted.
In view of the foregoing, the trial court did not abuse its discretion in admitting the social worker's testimony pursuant to Evid.R. 803(4) because the statements made by the victim to the social worker were for the purpose of medical diagnosis and treatment. Moreover, unlike the victim in Idaho v. Wright (1990),497 U.S. 805, 111 L.Ed.2d 638, also relied upon by Wilson, the victim here testified and was cross-examined by the defense.
Wilson's first assignment of error is overruled.
 II.
THE EVIDENCE PRESENTED TO TRIAL COURT WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTIONS AND IS THEREFORE CONTRARY TO LAW.
 III.
APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his second assignment of error, Wilson maintains that there was insufficient evidence as a matter of law to support his convictions. In his third assignment of error, Wilson argues that his convictions were against the manifest weight of the evidence. Specifically, he maintains that: (1) there was no physical evidence of rape or digital penetration; (2) the victim's testimony was suspect because it appeared to have been prompted by her mother; (3) his own confession does not support the twenty-five counts on which he was convicted; and (4) the essential elements of each of the crimes was not met. Because the evidence related to these assignments of error is the same, we shall discuss them together.
It is fundamental that the prosecution must prove every necessary element of the crime charged beyond a reasonable doubt.In re Winship (1970), 397 U.S. 358, 364, 25 L.Ed.2d 368, 375. Crim.R. 29(A) requires a trial court to enter a judgment of acquittal on offenses charged in an indictment if the evidence is insufficient to sustain a conviction. Evidence is insufficient if, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could not have found all the essential elements of the offense beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence presented by the state, if believed, "would convince the average mind of the defendant's guilt beyond a reasonable doubt." Id.
To determine whether a conviction is against the manifest weight of the evidence:
 [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340.
 A.
Wilson was convicted of five counts of rape, in violation of R.C. 2907.02(A)(1)(b). That statute provides:
 No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * *
 The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
"Sexual conduct" includes vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. R.C. 2907.01(A). "Penetration, however, slight, is sufficient to complete vaginal or anal intercourse." Id.
On the evening that Wilson was arrested, the victim told the hospital social worker who interviewed her that Wilson had penetrated her both digitally and with his penis and had fondled her "over 20 times." It is not clear from the social worker's testimony alone how many times each of the acts was committed. According to the examining physician, the victim told him that Wilson had penetrated her vaginally and anally with his penis "several times" since the previous October. The victim complained of vaginal pain, itching, and discharge at the time of the penetrations. Although there were no physical signs of abuse at the time of examination, the physician testified that he did not expect to find physical evidence because the victim told him that the last time Wilson had penetrated her was two weeks prior to the examination.
On direct examination, the victim testified that Wilson had engaged in fellatio with her "probably ten" times, had engaged in vaginal intercourse "probably ten" times, and had engaged in cunnilingus "probably ten" times. On cross-examination, the victim initially confirmed that Wilson had penetrated her vaginally with his penis ten times, but there was some confusion as to whether this recollection was entirely her own or whether her mother had influenced her testimony. The victim later stated that she remembered only two occasions at her home when Wilson had penetrated her vaginally.
One of Wilson's fellow inmates at the county jail testified that Wilson admitted performing cunnilingus on the victim and admitted that he "attempted" vaginal intercourse "but it just wouldn't go." Wilson also admitted that the victim told him "no," but he proceeded anyway.
The investigating detective testified that Wilson, after waiving his rights, admitted that he performed cunnilingus on the victim once in June and twice in May and engaged in fellatio twice in May.
Wilson argues that the lack of physical evidence of rape and the conflicting statements of the victim militate against his guilt. However, while physical evidence would strengthen the reliability of the child's statement, it is not required. Statev. Boston, 46 Ohio St.3d at 122. Both the victim and her mother testified and were cross examined. While the victim's testimony under cross-examination was susceptible to more than one interpretation, Wilson's admission to the investigating detective of five separate acts of sexual conduct, as defined by R.C.2907.01(A), with the victim is compelling.
Wilson also asserts that the state failed to prove that the victim was not his wife, an element of the crime of rape. The state of Ohio does not permit ten-year old children to marry. See R.C. 3101.01. Even if it did, R.C. 2907.02(A)(1)(b) prohibits rape among spouses living apart. There was testimony that established where Wilson lived and where the victim lived at the time of the crimes, and that they did not live together.
Accordingly, there was sufficient evidence of each element of rape to support the trial court's denial of Wilson's motion for acquittal and for the jury to determine that he had raped the victim five times.
 B.
Wilson was convicted of ten counts of felonious sexual penetration, in violation of R.C. 2907.12(A)(1)(b).[1] That statute provided:
 No person, without privilege to do so, shall insert any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * *
 The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
One of the officers who arrested Wilson testified that Wilson admitted that he had digitally penetrated the victim "roughly five or ten" times. The other arresting officer recalled Wilson admitting that he "put his finger inside her at least ten times." The victim told the physician who examined her that Wilson had digitally penetrated her both vaginally and anally and testified both on direct examination and on cross-examination that Wilson had digitally penetrated her "private" areas "probably ten" times.
In light of the foregoing, there was sufficient evidence of ten counts of felonious sexual penetration to support the trial court's denial of Wilson's motion for acquittal and for the jury to determine that Wilson sexually penetrated the victim ten times.
 C.
Wilson was convicted of ten counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4). That statute provides:
 No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
* * *
 The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
"Sexual contact" includes "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person. R.C. 2907.01(B).
The victim admitted to the examining physician that Wilson had fondled her, licked and kissed her mouth and breasts, and touched her vaginal area with his penis and with his finger or hand. The victim testified that Wilson "was always touching me," usually on her breast or in her "private areas." She testified that he had inserted a finger in her private area or touched her breast "probably ten" times. At times, Wilson would masturbate and put his semen on her "rear end." At other times, Wilson would have the victim touch him "in his private area." On cross-examination, the victim testified that Wilson had touched her ten times.
The intake officer at the county jail testified that upon arriving at the jail Wilson had "happy face" drawings on his legs, the victim's name written on one of his knees, and a peace symbol drawn on the top of his bald head. Wilson admitted to a fellow inmate that he would let the victim draw on him while he engaged in sexual activity with her.
There was sufficient evidence for the trial court to deny Wilson's motion for acquittal and for the jury to find Wilson guilty of ten counts of gross sexual imposition.
Wilson's second and third assignments of error are overruled.
 IV.
APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
In his fourth assignment of error, Wilson maintains that he was denied the effective assistance of counsel because: (1) counsel failed to argue that the criminal record of the inmate who testified was admissible in the interest of justice; (2) counsel introduced testimony that the victim's mother had also been molested as a child by Wilson; (3) counsel proceeded to trial seventeen days after arraignment; and (4) counsel introduced no expert witnesses on defendant's behalf.
Strickland v. Washington (1984), 466 U.S. 668, 687,80 L.Ed.2d 674, 693, sets forth the two-part standard for determining when a conviction must be reversed upon a claim of ineffective assistance of counsel:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound strategy. Id. at 689, 80 L.Ed.2d 674, 694-5; State v. Thompson
(1987), 33 Ohio St.3d 1, 10. The court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."Strickland, 466 U.S. at 690, 80 L.Ed.2d at 695.
Wilson first argues that his counsel was ineffective for not arguing to admit evidence that the inmate who testified against him had convictions more than ten years old.
Evid.R. 609(B) prohibits evidence of a conviction if "more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of probation, or shock probation, or parole * * * whichever is the later date[.]" The trial court had advised counsel once that he could only inquire into the inmate's felonies that were not greater than ten years old. Counsel is not required to make repetitive futile requests of the court in order to be effective. See State v. Mooney (July 26, 1995), Lorain App. No. 94CA005860, unreported, at 5.
As to counsel's inquiries regarding the childhood molestation of the victim's mother by Wilson, it is clear from the record as a whole that counsel was attempting to convince the jury that the victim's mother had suggested to her daughter the stories of rape and molestation that her daughter told and that her daughter's testimony was, as a result, not credible. This strategy does not amount to deficient performance.
As to counsel's decision to allow Wilson to be tried seventeen days after his arraignment, there is nothing to suggest that this, too, was not part of counsel's trial strategy. He may well have believed that the state would be unable to prepare a case proving thirty counts of sexual misconduct against Wilson in that period of time.
With respect to counsel's failure to provide expert testimony regarding the suggestibility of children and regarding the absence of physical evidence of rape and molestation, in light of Wilson's own admissions about sexual activity with the victim, we cannot say that counsel's decision was deficient. Even if this court could determine that counsel was ineffective for the reasons asserted, in light of the other evidence against Wilson, including his own admissions to police officers, Wilson has failed to demonstrate prejudice as a result of counsel's alleged failures. In order to demonstrate prejudice to the defense, an appellant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied, 497 U.S. 1011,111 L.Ed.2d 830; In re Wise (1994), 96 Ohio App.3d 619, 628.
Wilson's fourth assignment of error is overruled.
The decision of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _______________________________ WILLIAM R. BAIRD
FOR THE COURT
REECE, J.
MILLIGAN, J.
CONCUR.
(Milligan, J., retired Judge of the Fifth District Court of Appeals, sitting by assignment pursuant to Article IV, § 6(C), Constitution.)
[1] This section has been repealed, effective September 3, 1996.