OPINION
Appellant, Mallon Eugene Puckett, appeals the decision of the Butler County Common Pleas Court, Juvenile Division, granting a motion by the Butler County Children Services Board ("BCCSB") for permanent custody of his two children, Jarred Puckett and Abigail Puckett. For the reasons outlined below, we affirm the trial court's decision.
Jarred and Abigail, ages seven and five respectively, were removed from appellant's custody and a complaint alleging abuse and dependency was filed on October 18, 1996.[1] In July 1998, the children were found to be dependent and abused.[2] Appellant was named the perpetrator of abuse on the children. A dispositional hearing was held and an entry was filed on September 9, 1998. As part of the disposition of the case, appellant was ordered by the trial court to participate in intensive sexual abuse therapy.
BCCSB filed a motion for permanent custody that was postponed numerous times while a relative placement was pursued unsuccessfully. The hearing on the motion was held in March 2000, and an amended entry granting appellee permanent custody of Jarred and Abigail was filed by the juvenile court on September 28, 2000, nunc pro tunc to March 24, 2000.
Appellant appeals the decision to grant permanent custody of his children to BCCSB and raises eight assignments of error. For ease of discussion, we will address the assignments out of order and will combine some of the assignments of error.
Appellant's fourth, fifth, sixth and seventh assignments of error are as follows:
Assignment of Error No. 4:
 THE FINDING THAT RESPONDENT PERPETRATED SEXUAL ABUSE ON HIS CHILDREN WAS THE RESULT OF EXTENSIVE AND IMPROPER HEARSAY AND OTHER INCOMPETENT EVIDENCE THAT UNDULY PREJUDICED RESPONDENT AND DENIED HIM A FAIR HEARING.
Assignment of Error No. 5:
 THE UNSWORN TESTIMONY OF A VICTIM IN A JUVENILE ADJUDICATORY HEARING FOR ALLEGED SEXUAL ABUSE IS INSUFFICIENT TO SUPPORT AN ADJUDICATION OF SUCH ABUSE OR THE IDENTITY OF APPELLANT AS THE PERPETRATOR OF SUCH ABUSE.
Assignment of Error No. 6:
 APPELLANT WAS UNDULY PREJUDICED BY THE IMPROPER ADMISSION OF CHARACTER EVIDENCE AND ALLEGATIONS OF PRIOR ACTS OF MISCONDUCT.
Assignment of Error No. 7:
 APPELLANT WAS UNDULY PREJUDICED BY THE IMPROPER ADMISSION OF EVIDENCE THAT OPINED THAT A CHILD WITNESS WAS TRUTHFUL.
 In these four assignments of error, appellant is disputing evidentiary matters from the original adjudication of abuse and dependency. Appellant argues that we should consider these assignments because the original appeal was dismissed without a review on the merits. Appellant's appeal of the adjudication and disposition was dismissed with prejudice after appellant failed to file his brief and assignments of error.
In considering these four assignments of error, we must review the circumstances pertaining to appellant's first appeal of the adjudication. A review of the appellate docket shows that appellant,pro se, filed a notice of appeal of the adjudication and disposition on September 15, 1998. The scheduling order filed in the original appeal indicated that appellant's brief was due thirty days after the record was filed. After appellant received an extension, the transcript was filed on November 23, 1998. BCCSB filed a motion to dismiss the appeal on December 30, 1998, after appellant failed to file a brief on December 23, 1998, but that motion was denied by this court. Appellant retained appellate counsel, who filed a notice of appearance and a motion for additional time to file a brief on January 25, 1999. Although appellant was nearly one month past the deadline for filing his brief, this court permitted appellant additional time to file his brief until March 13, 1999. The notice also stated that no additional extensions would be granted. BCCSB filed a second motion to dismiss on March 16, 1999, after appellant missed the new deadline. Appellant did not respond to BCCSB's motion to dismiss until he filed a second motion for an extension on March 31, 1999, and noted that he had previously not received the motion to dismiss. Appellant asked for yet another extension on April 1, 1999, indicating that his computer or printer had malfunctioned and the brief was not complete. An entry of dismissal with prejudice was filed by this court on April 6, 1999, and a subsequent motion for reconsideration by appellant was denied.
Appellant's time to appeal the evidentiary decisions made at the adjudication and disposition hearings has expired. All parties in this case were entitled to move forward on the reunification or permanency plans for these children, resting on the finality of that judgment once appellant's appeal was unsuccessful. A dismissal with prejudice is treated as an adjudication on the merits. Tower City Properties v.Cuyahoga Cty. Bd. of Revision (1990), 49 Ohio St.3d 67, 69. Because the dismissal of appellant's appeal of the adjudication is treated as an adjudication on the merits, his claims are now barred by res judicata.Res judicata is applicable when an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. Quality Ready Mix,Inc. v. Mamone (1988), 35 Ohio St.3d 224, 227. We will not revisit those issues under appellant's assignment of error numbers four, five, six and seven. This court will assume the regularity of the proceedings below in reference to the adjudication and disposition. Accordingly, appellant's fourth, fifth, sixth and seventh assignments of error are overruled.
Assignment of Error No. 8:
 THE PERMANENT CUSTODY ORDER MUST BE VACATED, BECAUSE IT IS DERIVED FROM PRIOR PROCEEDINGS IN WHICH APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF LEGAL COUNSEL.
 Appellant argues that he was prejudiced by the ineffective assistance of both his trial and appellate counsel. Appellant asserts that his trial counsel failed to challenge evidentiary matters in the adjudication, and his appellate counsel failed to successfully challenge these errors in the first appeal. Appellant's argument concerning his trial counsel's alleged ineffective assistance in the adjudication and disposition is an issue that should have been addressed in the first appeal and is res judicata.
Appellant's counsel also raises his own alleged ineffective assistance in failing to successfully pursue the first appeal on the adjudication and disposition. This second part of appellant's eighth assignment of error presents a disturbing situation. Generally, appellate counsel must be presumed to be incapable of arguing his own ineffectiveness at the trial level. State v. Hooks (2001), 92 Ohio St.3d 83, 84. While appellate counsel is adding the new wrinkle of arguing his ineffectiveness in the original appeal, as opposed to ineffectiveness at trial, we see no reason why the theory preventing counsel from arguing his own ineffectiveness is not equally applicable in this instance. Appellant retained counsel to pursue the appeal of the adjudication and disposition and that appeal was dismissed with prejudice. The same retained counsel continued to represent appellant through the subsequent permanent custody proceedings and the appeal of that determination, only to allege his own ineffectiveness in an attempt to overturn this case. However, this case presents unusual circumstances and we will review the record in this case insofar as it pertains to ineffective assistance of counsel. Our decision is limited to the specific facts of the instant case.
When reviewing appellant's claim of ineffective assistance of counsel, this court engages in the two-pronged test enumerated in Strickland v.Washington (1984), 466 U.S. 668, 690-91. We determine: (1) whether counsel's performance fell below an objective standard of reasonable professional competence, and (2) if so, whether there is a reasonable probability that counsel's unprofessional errors prejudiced appellant so as to deprive him of a fair trial. Id. To show error in counsel's actions, appellant must overcome the strong presumption that licensed attorneys are competent and that the challenged action is the product of sound trial strategy and falls within the wide range of reasonable professional assistance. Id. To show resulting prejudice, appellant must establish a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceedings would have been different. Id. Appellant must show that, due to his attorney's ineffectiveness, his trial was so demonstrably unfair that there is a reasonable probability that the result would have been different absent his attorney's deficient performance. Id. at 693.
The first prong of the Strickland test can be reached by simply finding that appellant's brief and assignments of error were never timely filed, despite more than adequate opportunities to do so. Next, we must consider whether there is a reasonable probability that the result of appellant's case would have been different absent the attorney's performance.
A review of the adjudication and disposition of the case finds that the trial court had sufficient competent and credible evidence from which to find appellant's two children dependent and abused, and that appellant was the perpetrator of abuse on his children. See In re Pieper Children
(1993), 85 Ohio App.3d 318, 327. We find no error in the admission of the testimony of appellant's two children. The children testified in court about the sexual acts performed on them by appellant, acts they were required to perform on appellant, and acts they performed on each other. We are sufficiently convinced that these two children understood the duty to testify truthfully despite the omission of a formal oath. See State v. Frazier (1991), 61 Ohio St.3d 247, 251; see, also, State v.Short (July 6, 1992), Butler App. No. CA91-04-066, unreported.
In addition, there is nothing in the record that the judge, as the factfinder at adjudication and disposition, relied upon the disputed Evid.R. 404(B) evidence of appellant's other crimes, wrongs or acts or that appellant suffered material prejudice by the admission of this evidence. See State v. Martin (1985), 19 Ohio St.3d 122, 129; In reSims (1983), 13 Ohio App.3d 37, 41.
Further, the children's therapist did not improperly bolster the children's testimony by opining about whether the children were telling the truth about their allegations. The therapist was responding to questions concerning the children's possible motivation in disclosing the allegations. She was not telling the factfinder that the children were being truthful. See State v. Boston (1989), 46 Ohio St.3d 108, 129.
In addition to the children's testimony, the trial court heard testimony from the children's therapist about the allegations of sexual abuse against appellant as related by the children. That testimony was based upon information that arose during the course of her treatment of the children. State v. Vaughn (1995), 106 Ohio App.3d 775, 780.
Likewise, testimony about the allegations also was presented by a psychologist performing a psychological diagnostic evaluation of the two children for purposes of medical evaluation and treatment. State v.Chappell (1994), 97 Ohio App.3d at 530-531; State v. Vaughn,106 Ohio App.3d at 780.
Appellant further disputed the admission of testimony from the foster father concerning a statement made by Abigail after she had a nightmare. The trial court determined that Abigail's comment about her nightmare was disclosed by the child while she was still under the excitement of the startling event. The trial court did not abuse its discretion by admitting this statement as an excited utterance. See State v. Taylor
(1993), 66 Ohio St.3d 295, 304; State v. Smith (1986), 34 Ohio App.3d 180,190.
We are disturbed that the children's statements about the abuse were relayed by BCCSB caseworker Betsy Kinder under no recognized hearsay exception. However, appellant did not object to the caseworker's testimony at trial and the trial judge is presumed capable of disregarding improper testimony. In re Sims, 13 Ohio App.3d at 41. Further, based on the strength of the testimony of abuse by the children and the testimony admitted through recognized hearsay exceptions, we find that the admission of the testimony of the caseworker was cumulative and therefore harmless error. See State v. Williams (1988), 38 Ohio St.3d 346,353.
We cannot say that, absent appellate counsel's performance, appellant's adjudication would have been overturned. We find no merit in appellant's argument that he received ineffective appellate representation and that his adjudication would have been previously reversed or should now be reversed. Appellant's eighth assignment of error is overruled.
Assignment of Error No. 3:
 CONDITIONING APPELLANT'S ABILITY TO RECEIVE SEX THERAPY ON HIS FIRST "CONFESSING" TO SEXUAL MISCONDUCT WAS UNFAIRLY PREJUDICIAL TO APPELLANT'S RIGHT TO TIMELY SEEK REUNIFICATION.
 The case plan for appellant's family recommended that appellant seek intensive individual therapy. The trial court adopted the case plan in September 1998, and indicated on its dispositional entry that appellant was to seek sexual abuse therapy. BCCSB referred appellant to a specific therapist. Appellant stated that he met with the therapist on one occasion. Appellant asserts that he terminated the session early and never returned to that therapist because, according to appellant, the therapist insisted that appellant confess to committing sexual abuse before the therapeutic relationship could continue. Appellant maintains that he brought his predicament to the attention of the trial court a few months after the court order for counseling, but no changes were made. Appellant did not begin to engage in counseling with a different therapist until days before the permanent custody hearings in March 2000.
For this assignment of error, appellant relies upon the reasoning of an appeals court in In re Amanda W. (1997), 124 Ohio App.3d 136 . The court in that case stated that a case plan was prohibited from requiring a culpability admission from a parent facing possible criminal charges. The case plan in the instant case never required that appellant admit culpability. The trial court had already made a finding in the adjudication that appellant was the perpetrator of abuse on his two children. Appellant informed the trial court that the referred therapist was requiring an admission to having a problem and he did not want to submit to counseling with that individual. We can find no indication in the record that appellant was required to continue counseling with this referred therapist. In addition, we find no evidence on whether appellant's understanding of this therapist's stance was misstated, misunderstood, or could have otherwise been accommodated. Regardless of that therapist's position, once appellant decided not to pursue therapy with this individual, he apparently was free to seek a therapist of his choice. In fact, appellant did locate a therapist he preferred, but did not do so until days before the permanent custody hearing, which was more than one year after adjudication and more than three years after his children were placed with BCCSB.
We also note that well over a year elapsed between the time the motion for permanent custody was filed and the permanent custody hearings were held. During that time, a possible relative placement had surfaced and all parties were working toward that end, but the case plan still recommended therapy for appellant. Appellant apparently did nothing during that time to seek therapy of any kind. While all parties involved were disappointed that the relative placement did not succeed, appellant cannot sit on his rights and obligations during that time and not expect that passage of time in his children's lives to be a negative factor. We find no error in the requirement to seek therapy. Appellant's right to timely seek reunification was not unfairly prejudiced by the trial court. Appellant's third assignment of error is overruled.
Assignment of Error No. 2:
 THE DECISION AND ORDER OF THE TRIAL COURT GRANTING PERMANENT CUSTODY TO BCCSB IS UNLAWFUL, SINCE THERE IS NO CLEAR AND CONVINCING PROOF THAT SUCH AN ORDER IS IN THE BEST INTERESTS OF THE CHILDREN.
Assignment of Error No. 1:
 THE DECISION AND ORDER OF THE TRIAL COURT GRANTING PERMANENT CUSTODY TO BCCSB IS UNLAWFUL, SINCE THERE IS NOT CLEAR AND CONVINCING PROOF THAT THE CHILDREN CANNOT BE REUNITED WITH APPELLANT WITHIN A REASONABLE TIME.
 Appellant's final two assignments of error involve the trial court's award of permanent custody to BCCSB upon the agency's motion, pursuant to R.C. 2151.414. According to statute, the trial court may grant permanent custody if it determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody and that one of three other factors applies. R.C. 2151.414(B). The factor applicable in this case is that the children were not abandoned and cannot be placed with either parent within a reasonable time or should not be placed with the parent. R.C. 2151.414(B).
Appellant argues in his second assignment of error that the trial court failed to consider the children's relationship to paternal family members, the children's wishes, and the perceived problems with the adoptability of the children due to their special needs.
As previously noted, the standard of proof in granting permanent custody is by clear and convincing evidence, which is defined as that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469, 477.
An appellate court should not substitute its judgment for that of the trial court when competent and credible evidence going to all the essential elements of the case exists. See C.E. Morris Co. v. FoleyConstruction (1978), 54 Ohio St.2d 279, syllabus. This standard of review is used by appellate courts in reviewing awards of permanent custody of children to children services agencies. Jones v. Lucas County ChildrenServices Board (1988), 46 Ohio App.3d 85, 86. The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the testimony. Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
In determining the best interest of a child, R.C. 2151.414(D) provides that the juvenile court must consider all relevant factors, including specific factors enumerated by statute. We have reviewed the statute, the findings of the trial court, and the factors argued by appellant. The trial court detailed the attempts made to place the children with identified relatives. None of those placements was satisfactory or was sufficiently pursued by the relative involved. The trial court noted that appellant had not engaged in therapy to obtain custody of or visitation with his children, and thus had not been visiting with his children. At the time of the permanent custody hearings in March 2000, the children had been in BCCSB's custody since October 1996. The children were displaying troublesome behaviors and needed constant supervision. While the children continued to act out at home and school, their relationship with their foster family, with whom they were placed in October 1996, was strong.
The children had expressed an interest in being placed with the relative who had initially pursued custody, but were obviously disappointed when that placement did not occur. The children had also expressed an interest in eventual placement with their father if he had successfully obtained "help" for his problems. The children's guardianad litem opined to the court that placement through BCCSB was the only legally secure placement available and was in the children's best interest. The trial court also heard testimony from BCCSB and the foster father that the children's behaviors and special needs would not foreclose the opportunity of adoption for them. The foster father indicated that the children experienced renewed behavioral problems when the relative placement failed, but adoption was viable after he and his family provided the appropriate structure for the children. We find that the trial court did not err in finding clear and convincing evidence that it was in the best interest of the children to be placed in the permanent custody of BCCSB. Appellant's second assignment of error is overruled.
Appellant argues in his first assignment of error that the trial court relied heavily upon appellant's failure to seek sex abuse counseling in finding that the children could not be reunited with him. Again, appellant argues that his failure to seek counseling was unavoidable because appellant did not want to admit to abusing his children to receive the counseling. Appellant also disputes the trial court's reliance on the written reports of the children's therapist and on BCCSB's reasonable efforts to provide services.
The juvenile court must assess whether the child can be placed with either or both of the child's parents within a reasonable time. R.C.2151.414(B)(1). In making its determination, the court is guided by the factors set forth in R.C. 2151.414(E):
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
R.C. 2151.414(E)(1).
 Appellant argues that the trial court's reliance on the written reports of the children's therapist constituted consideration of inadmissible hearsay. These written reports were admitted into evidence during disposition and post-disposition, without objection and subject to cross-examination. At any time during this matter, the therapist could have been called to testify and subjected to cross-examination by appellant. A review of the record reveals that this apparently was not attempted or accomplished by appellant. This therapist had established a therapeutic relationship with the children. We can only assume that it was appellant's trial strategy not to bring this therapist before the court and to permit the introduction of the written reports only. The trial court did not err to the extent that it relied upon these reports from the therapist.
Appellant argues that BCCSB did not make a diligent effort to provide services. The case plan recommended therapy for appellant and his children. The respective therapists would determine when and if appellant could begin visitations with his children. Appellant's children consistently participated in therapy and other services. Appellant refused to engage in therapy with the therapist with whom BCCSB referred him. BCCSB arranged psychological evaluations for appellant. BCCSB conducted home studies on Ohio relatives and made efforts to facilitate visitation between the children and appellant's family members. Appellant made no further efforts with respect to his responsibilities under the case plan while it appeared that his relative would receive custody of the children. Unfortunately, appellant ignored his obligations at his own peril. The trial court found that BCCSB had made reasonable efforts and we find no error in that determination.
Much like appellant's third assignment of error, appellant asserts that his failure to engage in therapy should not have been used by the trial court in its determination of whether appellant can parent his children within a reasonable time. As we have previously discussed in this opinion, appellant's two children testified at the adjudication hearing about the sexual abuse they endured from appellant. In response to the evidence it received, the trial court ordered appellant to seek sexual abuse therapy. Appellant did not do so for more than a year while his children continued their placement in foster care. In fact, appellant did not engage in any form of therapy until days before the permanent custody hearings.
A psychologist testified on appellant's behalf at the permanent custody hearings and stated that he had recently talked with appellant, and would be arranging therapy for appellant with a therapist. The trial court was faced with the duration of time in which the children had no permanent living plans compared with the prospect of appellant just commencing therapy and its unknown success. At the time of the permanent custody hearings, the trial court was presented with clear and convincing evidence that the children could not be placed with appellant within a reasonable time.[3] We will not substitute our judgment for that of the trial court when competent and credible evidence going to all the essential elements exists. Appellant's first assignment of error is overruled.
WALSH, J., and KERNS, J., concur.
Kerns, J., retired, of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.
[1] The mother of the children, Cecilia Singleton, never sought custody of the children and is not a party to this appeal.
[2] Adjudication was delayed while criminal charges were pending.
[3] Although appellant argues that reports from his therapist show that he was participating in therapy, appellant admits that these reports concern therapy sessions held after the permanent custody hearing and are not part of the appellate record. A reviewing court cannot add matter to the record that was not part of the trial court's proceedings and then decide the appeal on the basis of the new matter. State v. Hooks
(2001), 92 Ohio St.3d 83, 84.